David PRYOR, Governor of the
State of Arkansas, et al *v*.
Lynn LOWE and Delia BISSETT

75-120                                            523 S.W. 2d 199

Opinion delivered May 27, 1975

*Jim Guy Tucker*, Atty. Gen., by: *Sam Bratton Jr.* and *Alston Jennings Jr.*, Asst. Attys. Gen., for appellants.

*Ed Bethune* and *Cliff Jackson*, for appellees Lowe and Bissett; *Thweatt & Thweatt*, for intervenors Glover and Hampton.

*Robert A. Leflar, Sidney S. McMath, Reginald A. Eilbott Jr.* and *James Sharp*, amicus curiae.

CONLEY BYRD, Justice. At issue here is the validity of a "limited constitutional convention" established by Act 16 of 1975 — not ratified by the electorate. The trial court agreed with appellees, Lynn Lowe, Delia Bissett, Wayne Hampton and Bobby L. Glover, as citizens and taxpayers, that Act 16 of 1975 was invalid and therefore enjoined the expenditure of any of the $800,000 in funds appropriated by Act 758 of 1975

to defray the expenses of the convention. This appeal is brought by appellants, David Pryor, Governor of the State of Arkansas; Jimmie "Red" Jones, Auditor of the State of Arkansas; Nancy J. Hall, Treasurer of the State of Arkansas; and Robert Harvey, President Pro Tempore of the Arkansas Senate. For reversal they contend, among other things, that the legislative limitations placed upon the convention delegates do not contravene any provision of the Constitution of Arkansas (1874).

Act 16, here in question, màkes a finding "that the requirements of a modern and more effective state government demand the consideration by the people of a new Constitution at a special election." Section 2 creates a convention to be composed of 35 appointed members — 27 appointed by the Governor, five from the membership of the House of Representatives and three from the membership of the Senate. Section 3 provides for the officials of the convention. Section 4 provides as follows:

"SECTION 4. LIMITS OF AUTHORITY. The following provisions of the existing Arkansas Constitution of 1874, as amended, shall be contained within the proposed Constitution recommended by the Convention in the same form and language as they presently exist in the Arkansas Constitution of 1874, as amended; provided, however, that the following provisions may be arranged within the proposed Constitution in an appropriate and logical order but may not be transferred to the Schedule of the proposed Constitution:

(a) The 'Declaration of Rights' (Article 2, including existing amendments thereto), except that additional rights may be guaranteed;

(b) The 'Judicial Department,' (Article 7, and existing amendments thereto);

(c) Amendment No. 55, relating to county government, adopted in 1974;

(d) 'Education' (Article 14, and existing amendments thereto);

(e) Amendment No. 52 (community colleges);

(f) 'Franchise and Elections' (Article 3, and existing amendments thereto, including Amendment No. 50 (voting machines) and Amendment No. 51 (voter registration);

(g) 'Workmen's Compensation' (Amendment No. 26);

(h) 'Rights of Labor' (Amendment No. 34);

(i) 'Purchase of Printing, Stationery and Supplies' (Amendment No. 54, adopted in 1974);

(j) 'Industrial Development Bonds Authority' (Amendment No. 49);

(k) 'Usury-Legal Rate' (Article 19, Section 13).

The Convention shall not provide within the proposed Constitution any provision which affects the numbers of members of the Senate and/or House of Representatives of the General Assembly or the apportionment of the members of the Senate or House of Representatives of the General Assembly which provision would be applicable to members of the General Assembly elected prior to the General Election of 1982; and the Convention shall not provide within the proposed Constitution any provision which affects the number of members or the apportionment of the members of the Senate and/or House of Representatives of the General Assembly other than a provision based upon the federal decennial census of 1980 and federal census' thereafter."

Section 5 establishes the beginning date of the convention, the time limit within which the convention must act, recess and reconvene, and requires the advertising of the final draft of the convention one time before the special election. Section 7 requires that the proposals of the convention be submitted to a popular vote on the third Tuesday in September 1975. Section 11 provides:

"SECTION 11. EFFECT OF PROPOSED AMENDMENTS OF CONSTITUTION OF 1874. If the proposed Constitution recommended by the Convention is approved and adopted by the people of the State of Arkansas as provided in this Act in which event it will supersede, replace and take precedence over the Arkansas Constitution of 1874, as amended, any amendments to the Constitution of 1874, as amended, proposed by the Seventieth Regular Session of the General Assembly of the State of Arkansas shall be considered null and void and shall not be voted upon by the people."

In addition to the limitations placed upon the General Assembly in Art. 19, § 22 and Amendment No. 7 limiting the submission of Amendments, the Bill of Rights in our Constitution contains the following provisions:

Art. 2, § 1 "Source of power. — All political power is inherent in the people and government is instituted for their protection, security and benefit; and they have the right to alter, reform or abolish the same in such manner as they may think proper."

Art. 2, § 29. "*Enumeration of rights of people not exclusive of other rights — Protection against encroachment —* This enumeration of rights shall not be construed to deny or disparage others retained by the people and to guard against any encroachments on the rights herein retained, or any transgression of any of the higher powers herein delegated, *we declare that everything in this article is excepted out of the general powers of the government, and shall forever remain inviolate, and that all laws contrary thereto, or to the other provisions herein contained, shall be void.*" (Emphasis added)

In *Harvey* v. *Ridgeway*, 248 Ark. 35, 450 S.W. 2d 281 (1970), we had before us the issue of whether Senator Robert Harvey was barred by Art. 5, § 10 of our Constitution from sitting as a delegate in the 1970 convention. [1] In holding

---

[1] The Constitution proposed by that convention was defeated at the 1970 General Election.

that Senator Harvey was not prohibited by Ark. Const., Art. 5, § 10, from being seated as a delegate, we premised the holding upon the fact that the position of a delegate to a constitutional convention is derived from the power inherent in the people as set forth in Art. 2, § 1, *supra*. We there pointed out that a constitutional delegate is an agent of the people "for the purpose of acting in their stead in the exercise of their inherent power in working out the substance, form and content of a constitution to be submitted to all the people of Arkansas for their approval or rejection."

Since the delegates to a constitutional convention are exercising that ". . . power . . . inherent in the people . . . " reserved by the Bill of Rights, Art. 2, § 1, *supra*, then it logically follows that any limitation upon the exercise of the power by the General Assembly, without a ratification thereof by the electorate, is prohibited by the last section of the Bill of Rights, Art. 2, § 29, *supra*, which provides: ". . . to guard against any encroachments on the rights herein retained, . . . , we declare that everything in this article is excepted out of the general powers of the government . . . and that all laws contrary thereto, . . . shall be void." It follows that the limitations placed upon the delegates by Act 16 of 1975 render the Act void.

Since it appears that the limitations placed upon the delegates are so mutually connected with and dependent upon the other provisions of the Act, *supra*, as to warrant the belief that the Legislature would not pass the residue independently, it follows that we find the Act is not severable. See *Cotham v. Coffman*, 111 Ark. 108, 163 S.W. 1183 (1914). Professor Ralph C. Barnhart, former Dean, School of Law, University of Arkansas in his article, 17 Ark. L. Rev. 1, *"A New Constitution for Arkansas?"*, points out that the "limited Constitutional Convention" is the price that has to be paid to get the legislature to agree to call the convention at all.

Since the foregoing discussion disposes of this litigation, we find it unnecessary to discuss the other issues set forth in the excellent briefs of the parties and the amici curiae.

Affirmed.

LYLE BROWN, FOGLEMAN and JONES, JJ., concur.

HARRIS, C.J., GEORGE ROSE SMITH, and HOLT, JJ., dissent.

JOHN A. FOGLEMAN, Justice, concurring. I fully concur in the majority opinion.

I take the dissenting opinion to be based upon a misreading of Article 2 of our constitution. In my opinion the very language of § 29 is certainly an implied, if not express, limitation upon the powers of the General Assembly in the matter of the alteration or reform of our government, in the manner attempted by Act 16 of 1975.

I can find no legal precedent anywhere, even in those states whose constitutions have no provision such as our § 29, holding valid the procedures outlined by this act where:

1. There has been no call of a convention or ratification of the call.

2. None of the "delegates" were elected by the people.

3. There is a legislative limitation on the extent to which "revision" is to be considered by the "convention."

4. The work product of the "convention" is to be submitted at a special election.

I doubt if there is any historical precedent.

To me it is clear that this attempt to call a "limited constitutional convention" would clearly remove the delegates from their status as agents of the people for the purpose of acting in their stead in the exercise of their inherent, sovereign power, as we defined it in *Harvey* v. *Ridgeway*, 248 Ark. 35, 450 S.W. 2d 281.

The legislature can only exercise powers not expressly or by fair implication forbidden to it by the constitution of Arkansas or of the United States. *Butler* v. *Board of Directors of*

*Fourche Drainage District*, 99 Ark. 100, 137 S.W. 251; *Webb* v. *State*, 176 Ark. 722, 3 S.W. 2d 1000.

To me there is more than a fair implication that the creation of this "limited constitutional convention" is an encroachment on the inherent right of the people which is excepted out of the general power of the government.

There should be no question about the non-severability of the act. It creates the "Arkansas Constitutional Convention of 1975." See § 2. Without any provision relating to composition and procedures set out in §§ 2, 3, 4, 5, 6, 9 and 10, it is not the "Arkansas Constitutional Convention of 1975." I do not see how it can seriously be argued that the General Assembly would have passed the act without any of its sections having been included, especially § 4. I don't see how §`11 has any bearing on the question.

Where elimination of an unconstitutional clause gives an act considerably broader scope than was intended by the legislature, it is not severable. *Arkansas Commerce Commission* v. *Arkansas Ozarks Railway Co.*, 235 Ark. 89, 357 S.W. 2d 295. An Act is not severable when its provisions are so interwoven and interconnected that it reflects the intent of the legislature to enact it as a whole. *Wenderoth* v. *City of Fort Smith,* 251 Ark. 342, 472 S.W. 2d 74. See also, *Neal* v. *Still,* 248 Ark. 1132, 455 S.W. 2d 921.

Clearly, Act 16 would have a much broader scope without § 4. It is just as clear that all its sections are so interwoven and interconnected that it reflects the intention of the legislature to enact it as a whole.

The time frame in which this case has been presented and the urgency of the decision render further elaboration impossible. I would point out that it is clear to me that we are faced with a situation where advocates of the people seek to prevent an illegal exaction in the expenditure of public funds in carrying out an unauthorized act and not a situation where there has been ratification of an unauthorized act. It is only in that perspective that we have any right to view the matter.

I am authorized to state that Mr. Justice Brown joins in this opinion.

J. FRED JONES, Justice. I agree with the majority opinion that Act 16 of 1975 is unconstitutional and has no salvage value through severability. I base my conclusion and reasoning on one point only. It is my view that Section 4 of Act 16, quite true to its title, limits the authority of the convention delegates and, in actuality, directs the readoption of many provisions of the present Constitution without change. Section 4 of the Act attempts to prohibit change in these provisions when once the delegates are in convention assembled.

The people may restrict the Legislature to the extent they deem proper and desire as indeed they have done in most every section of Article 5 of the present Constitution pertaining to the Legislative Department. But the Legislature can never rise above the source of all political power and restrict the people in the exercise of the power and rights they have reserved to themselves. As I interpret Section 4 of Act 16, it contains just such restriction.

CARLETON HARRIS, Chief Justice, dissenting. I disagree with the decision rendered today by the majority for, in considering the arguments of appellees, it appears to me that principal objections to Act 16 are based upon practicalities, rather than actual illegality. As I view it, it is not within the province of this court to determine, or pass upon, the wisdom of legislation; policy decisions are generally left to the General Assembly. In other words, whether it is practical to call a convention whose task will not include revision of the entire Constitution, whether it is practical to provide a special election, or whether there is sufficient time for the people to acquaint themselves with the provisions of the proposed instrument, etc. are not matters properly within the scope of this court. The *only* question with which we should be concerned is whether Act 16 is in conflict with the Arkansas Constitution of 1874, as amended.[1]

---

[1] Of course, a legislature can exercise all power that is not expressly or impliedly prohibited by the Constitution. *State v. Ashley*, 1 Ark. 513.

It appears that the majority reach their conclusions principally upon two premises, *viz.*, that the legislature has no authority under the Constitution to call a constitutional convention without such call being ratified by the people, and the limits set upon the authority of the proposed convention are a violation of our Constitution. In addition, the citing of *Harvey* v. *Ridgeway*, 248 Ark. 35, 450 S.W.2d 281, clearly implies that the court is holding that delegates must be elected, and that the appointment of delegates by the Governor and General Assembly conflicts with constitutional requirements. Amendment 7 is also fleetingly mentioned, but let it simply be said that this is the initiative and referendum amendment which sets out how the people themselves may initiate constitutional amendments or laws, and the manner in which legislative acts can be referred to a vote by the people. I cannot see how Amendment 7 has the slightest relevance to the question of whether the General Assembly has power to call a constitutional convention.

As to the election of delegates, we again are talking about practicalities. Personally, I would prefer that method, but *not one provision* of the Arkansas Constitution has been pointed out that makes such a requirement, and I certainly do not take *Harvey* v. *Ridgeway, supra* to so hold. There was no occasion for such a holding, for Senator Harvey had been elected by the people to serve (in the Constitutional Convention of 1970), and the sole question in that litigation was whether, being a state senator, he could also serve as a delegate. The question of whether a delegate could be appointed was not involved "top, side, or bottom."[2]

Aside from the argument relating to practical aspects, the import of much of appellees' argument seems to be directed to the supposition that the proposed constitutional convention will actually have the authority to change our Constitution. Even the trial court, in its findings, stated, "But

[2]Though without actual probative value in this litigation, it is interesting to observe that probably the finest constitutional document of all time, the Constitution of the United States, was prepared by convention delegates who were not elected by the people, but were mainly appointed by state authorities. In fact, the convention itself was called by the Continental Congress without a prior vote by either the people or by the several states.

I do not believe that the people intended to give anyone the authority to change their Constitution." I agree with this statement wholeheartedly, but the proposed constitutional convention could not, of course, in any sense, change that document. A constitutional convention can only recommend — suggest — advise — propose — proffer — but it cannot go one whit further! To use a simple illustration, the government or business executive receives suggestions or recommendations each day from subordinates as to changes that might provide greater efficiency — but these are only recommendations — the business executive is free to accept or reject such recommendations. Here, too, the decision to accept or reject the recommendations of the constitutional convention is the choice of the people and absolutely no change in the Constitution has been made until a majority of the electors approve the proposed document.

I feel that the majority have entirely misconstrued Article 2, § 29, quoted in the majority opinion (with their emphasis), as follows:

"Art. 2, § 29. '*Enumeration of rights of people not exclusive of other rights — Protection against encroachment —* This enumeration of rights shall not be construed to deny or disparage others retained by the people and to guard against any encroachments on the rights herein retained, or any transgression of any of the higher powers herein delegated, *we declare that everything in this article is excepted out of the general powers of the government, and shall forever remain inviolate, and that all laws contrary thereto, or to the other provisions herein contained, shall be void.' "*

Article 2 is the "Declaration of Rights", and sets out the general rights of the people which cannot be abridged by governmental decree or legislation. For instance, Section 1 deals with the source of power, declaring that "All political power is inherent in the people and government is instituted for their protection, security and benefit; and they have the right to alter, reform or abolish the same in such manner as they may think proper." Section 2 provides that all men are created equally free and independent and have the right to

acquire, possess, and protect property and reputation, and to pursue happiness. "Section 3 sets out that all are equal before the law. Section 4 grants the right of assembly and petition. Section 5 gives the right to bear arms. Section 6 deals with liberty of the press and of speech. Section 7 grants the right to a jury trial. Other well-known provisions relate to the redress of wrongs (§ 13), unreasonable searches and seizures (§ 15), property rights (§ 22), and religious liberty (§§ 24, 25 and 26). No point would be served in setting out what each section deals with, but it is sufficient to say that all deal with the basic and fundamental rights that every citizen enjoys under a democratic form of government, and Section 29, including the portion italicized by the majority, simply provides, in effect, that neither the legislative, executive, nor judicial branch of the government, has the authority to pass, promulgate, or render, any measure, order, or decree that would take away any of those rights. Neither the matter of constitutional conventions, nor the manner in which they shall be called, is even remotely touched upon.

As for Article 2, § 1, of course all political power is inherent in the people, and the people would have the opportunity (except for this majority decision) to exercise that power at the election called for in Act 16.

I am puzzled by the inclusion by the majority of § 11 of Act 16 in their opinion, and cannot comprehend how it has any bearing whatsoever on the right of the General Assembly to call the convention. This is the last section in the act (except the emergency clause), does not deal in any manner with setting up the convention, is nothing more than a self-imposed limitation on the Seventieth General Assembly (not the people), and is without meaning.

A review of the proceedings of the Seventieth General Assembly held this year reveals that no constitutional amendment was proposed, so, of course, there is nothing to submit to the people. If none are passed after the Assembly reconvenes next year, there still, of course, will be nothing to submit. There is no constitutional requirement for the legislature to submit any proposed constitutional amend-

ment, and the General Assembly is thus free to do as it pleases in this respect. The last nine words of § 11, *viz.*, "and shall not be voted upon by the people" are nothing but surplusage and completely meaningless, for if any proposals are "null and void" as stated in the section, there is nothing for the people to vote upon. For that matter, before any proposal could be submitted to a vote, the provisions of Article 19, § 22, would have to be complied with.

Be that as it may, if the section is void, it is certainly severable.[3] As stated, it does not deal in any manner with establishing the convention, nor any of the procedures that shall be followed, and no other section or provision of the act is dependent upon it. I have no doubt but that Act 16 would have been passed without its inclusion. As stated by the late Justice Frank G. Smith, writing for the court in *Cotham v. Coffman*, 111 Ark. 108, 163 S.W. 1183:

"If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained."

As to the "limited constitutional convention", I know of no decision, and none has been cited from any jurisdiction, which holds that a legislatively called convention is invalid because of only providing a "limited convention".[4]

There is really no necessity in discussing the "limitation", for at the conclusion of the discussion, I would simply wind up with the same view expressed by Dr. Robert A. Leflar, Distinguished Professor of Law[5] (and I do not know of a more respected or eminent legal authority in

---

[3]As we have held numerous times, a severance clause is not necessary in holding the provisions of an act to be severable. See *Berry v. Gordon*, 237 Ark. 865 (Supplemental Opinion on Rehearing), 376 S.W.2d 279.

[4]The convention is empowered to propose revision of 14 of the 19 articles contained in the present Constitution, and 39 of the 49 amendments to our Constitution which are still effective.

[5]Also former Dean of the School of Law, University of Arkansas, and Associate Justice of this Court.

Arkansas), in his Amicus Curiae brief filed in this Court. Dr. Leflar, pointing out that there is absolutely no prohibition in the Arkansas Constitution against the legislature calling a constitutional convention without a vote of the people, nor any constitutional violation in circumscribing the areas of revision, states:

> "For any court to read such a limitation into the Constitution would be for the court to re-write the Constitution."

It cannot be more forcefully expressed!

I would uphold Act 16 and thus give the people of our State, in whom all power is inherent, the right and opportunity to alter their Constitution.

I am authorized to state that Justices George Rose Smith and Holt join in this dissent.