HANDY DAN IMPROVEMENT CENTER, INC. et al
*v.* Charles G. ADAMS et al

81-233                                          633 S.W.2d 699

Supreme Court of Arkansas
Opinion delivered June 1, 1982

*Rose Law Firm,* for appellant Handy Dan.

*Owens, McHaney & Calhoun,* for appellant The Kroger Co.

*House, Holmes & Jewell, P.A.,* for appellant Safeway Stores, Inc.

*Wright, Lindsey & Jennings,* for appellant Skaggs.

*Tucker & Cuffman,* for appellee Adams.

*Steve Clark,* Atty. Gen., by: *R. B. Friedlander,* Asst. Atty. Gen., for appellees.

CHARLES B. ROSCOPF, Special Justice. This case concerns the constitutionality of the Sunday closing law, Ark. Act 135 of 1965 (codified as Ark. Stat. Ann. Sections 41-3852 through 41-3863 [Repl. 1977]). The Plaintiffs, seven private individuals and five retail establishments residing and doing business in Pulaski County, brought this action to enjoin the Defendants, five competing retail establishments, from engaging in retail sales on Sunday in violation of the act. The attorney general was made a party to this action as required by Ark. Stat. Ann. Section 34-2510 (Repl. 1962).

While the Sunday closing law is a criminal law providing criminal penalties, Section 7 declares the Sunday sale of prohibited articles to be a public nuisance subject to injunctive action. The Defendants filed Answers challenging the constitutionality of the act.

After a trial of the issues, the chancellor found that all of the Defendants were in violation of the Sunday closing law and that the law was constitutional. The Defendants were permanently enjoined from selling the prohibited articles on Sunday.

The issue on appeal is whether Act 135 of 1965 is constitutional. The questions presented are (1) whether the Sunday closing law is so vague that it fails to give reasonable notice of the forbidden conduct and therefore violates due process as guaranteed by the U.S. Constitution, Amendment XIV, and the Arkansas Constitution, Article 2, Section 8; (2) whether the classifications within the law deny equal protection as guaranteed by the U.S. Constitution, Article XIV, and the Arkansas Constitution, Article 2, Section 3; (3) whether the enforcement of the act amounted to constitutionally prohibited discriminatory enforcement, and (4) whether the trial court erred by enjoining all of the Defendants' stores in the County.

It should be made quite clear at this point that Appellants do not invoke the religious establishment challenge which is so often connected with Sunday closing cases.

Before the questions raised are discussed, it is appropriate to consider the presumptions and burdens of proof involved in cases which challenge the constitutionality of legislative acts. This Court has always held that before it may strike down an act of the legislature on the basis of unconstitutionality, it must clearly appear that the act is at variance with the Constitution. An act of the legislature is presumed to be constitutional, and any doubt on the question of constitutionality must be resolved in favor of the act. *Davis Warehouse Company* v. *Bowles,* 321 U.S. 144, 64 S. Ct. 474, 88 L. Ed. 635 (1943); *Baratti* v. *Koser Gin Co.,* 206 Ark. 813, 177 S.W.2d 750 (1944); *Bush* v. *Martineau,* 174 Ark.

214, 295 S.W. 9 (1927); *State* v. *Moore,* 76 Ark. 197, 88 S.W. 881 (1905). Further, the party who alleges the unconstitutionality of a statute has the burden of proving that claim. *State ex. rel. Kimberlite Diamond Mining and Washing Company* v. *Hodges,* 114 Ark. 155, 169 S.W. 942 (1914); and *Rice* v. *Lonoke-Cabot Road Improvement District No. 11,* 142 Ark. 454, 221 S.W. 179 (1920).

The arguments pressed by the Appellants are not new in the area of Sunday closing cases, and the tests prescribed are well established. Four landmark Sunday closing cases, relied on heavily by the Appellees, were decided by the U.S. Supreme Court in 1961. *McGowan* v. *Maryland,* 366 U.S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961); *Two Guys From Harrison-Allentown, Inc.* v. *McGinley,* 366 U.S. 582, 81 S. Ct. 1135, 6 L. Ed. 2d 551 (1961); *Braunfeld* v. *Brown,* 366 U.S. 599, 81 S. Ct. 1144, 6 L. Ed. 2d 563 (1961); and *Gallagher* v. *Crown Kosher Super Market,* 366 U.S. 617, 81 S. Ct. 1122, 6 L. Ed. 2d 536 (1961). A fairly recent scoreboard on Sunday closing cases has been conveniently compiled in *Caldor's Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 417 A.2d 343 (1979).

It will be seen from these cases that in applying the tests and interpreting the cases, each case is controlled to a great extent by statutory development over many decades, sometimes centuries. This accounts, in part, for the wide diversity of results reached in different jurisdictions. State cases decided since *McGowan, supra,* and the other 1961 landmark cases continue to be divided. This is because the precedential value of these landmark cases is limited by the particular legislative schemes involved. The constitutional challenges made by the Appellants are not new to this court either, and likewise the language of the ordinance or act being considered must be carefully scrutinized in the process of case interpretation.

Sunday closing laws have their roots in the very earliest stages of human history. Justice Wood in *Rosenbaum* v. *State,* 131 Ark. 251, 199 S.W. 388 (1917) recites a classic statement of the evolution of the original Arkansas Sunday closing laws. *See, e.g., Two Guys From Harrison, Inc.* v.

*Furman,* 32 N.J. 199, 160 A.2d 265 (1960): Note, "Sunday Closing Laws in The United States: An Unconstitutional Anachronism", 11 Suffolk U. L. Rev. 1106 (1977).

Contained in our Revised Statutes adopted in 1837 were comprehensive Sabbath Breaking Laws that prohibited not only all sales on Sunday but also all labor on Sunday with some minor exceptions for acts of daily necessity and charity. Rev. Stat., ch. 44, div. 7, Art. II. Justice Wood in *Rosenbaum, supra,* points out that these Sabbath Breaking Laws are almost a literal copy of an act adopted during the reign of Charles II. Incredibly, these Sunday laws stayed on our books almost unchanged until the labor proscription section (Ark. Stat. Ann. Section 41-3801 [1947]) was repealed by Ark. Act 554 of 1953 and the sales proscription section (Ark. Stat. Ann. Section 41-3802 [1947]) was repealed by Ark. Act 367 of 1957. From 1957 until the enactment of Ark. Act 135 of 1965, Arkansas had no Sunday closing laws applicable generally to the entire state. It is important to note that the Sunday closing laws which were effective in Arkansas from 1837 to 1957 prohibited the retail of "any goods, wares and merchandise" on Sunday with the only exception being "charity or necessity on the part of the customer". This brief statutory history is included in order that Act 135 may be considered in the proper historical perspective.

We will consider the questions presented in the order set out above. First, we will discuss Appellants' contention that Act 135 is unconstitutionally vague. The core provision of this act is Section 2 (Ark. Stat. Ann. Section 41-3853 [Repl. 1977]), which provides that it shall be unlawful to sell or offer to sell on Sunday the following commodities: (1) clothing and wearing apparel; (2) clothing accessories; (3) household utensils, glassware and china; (4) home, business or office furniture; (5) mechanical or electrical household or office appliances; (6) hardware, tools and paints; (7) building and lumber supply materials; (8) jewelry, silverware, watches and clocks; (9) luggage and leather goods; (10) musical instruments and recordings; (11) radios and television sets, receivers, record players, recording devices and components and parts therefor; (12) lawnmowers and other

manual and power driven outdoor gardening equipment; (13) cameras, projectors and parts and equipment therefor (except film, flashbulbs and batteries); and (14) linens, yard goods, trimmings and sewing supplies.

It is fundamental that a criminal statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. *Connally* v. *General Construction Company,* 269 U.S. 385, 46 S. Ct. 126, 70 L. Ed. 322 (1925). The rationale behind this rule was clearly expressed in *Grayned* v. *City of Rockford,* 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972):

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

The most recent Arkansas case involving the point is *Davis* v. *Smith,* 266 Ark. 112, 583 S.W.2d 37 (1979), which reiterates the due process requirements in the criminal law field as in *Grayned, supra,* and cites *Papa Christou* v. *City of Jacksonville,* 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972), and *Herndon* v. *Lowry,* 301 U.S. 243, 57 S. Ct. 732, 81 L. Ed. 1066 (1937). It is against these basic rules of fair play that Act 135 must be tested.

The facts for the most part are undisputed. The Plaintiffs proved the unlawful sale of prohibited articles and explained the effects on their businesses of such sales on Sunday when Plaintiffs were closed. They offered excerpts from the minutes of the Board of Directors of the City of Little Rock which instructed the city manager to put blue

laws last on the priority list of enforcement. The Defendants offered store managers and clerks to show their inability to identify clearly articles prohibited by the act and to show the pervasive confusion which exists in the interpretation of Section 2 of Act 135. Walter E. Simpson, Chief of the Little Rock Police Department, called by the Defendants, testified that enforcement of the act had been sporadic and that "usually a couple of times a year we take enforcement action". He confirmed the testimony of other witnesses that identification of prohibited articles had been rendered more difficult since 1977 and 1978 by reason of the development of large full-service stores which sell thousands of different articles. In this connection store managers testified that they had for sale fifty thousand to seventy thousand articles and that only a cursory survey revealed that scores of articles could not be identified as prohibited or permitted. Simpson candidly admitted that only articles in clear violation were purchased when enforcement action was taken and that there were three categories of articles, those clearly prohibited, those clearly permitted, and those not clearly defined as either prohibited or permitted. In the latter category, he stated, were hundreds and hundreds of articles.

From a cursory reading of the fourteen prohibited categories it would seem that a man of common intelligence could steer a safe course on the side of lawful sales, but a studied analysis quickly reveals that the prohibitions are vague and do not meet constitutional standards. Indeed, the act raises more questions than it answers. For example, are yard sprinklers and high pressure hoses within the category "other manual and power driven outdoor gardening equipment"? Can a merchant sell an electronic strobe light for a camera, which performs the same function as a permitted flashbulb? Is a slide viewer within the category of "cameras, projectors and parts and equipment therefor"? Is a non-musical comedy phonograph record within the classification of "musical instruments and recordings"? Is the sale of a toy drum prohibited, even though sales of toys are not? Does "china" include paper, plastic or crockery dishes, or only items (whatever their purpose) made of highly fired translucent porcelain? Are artists' paints, oils, acrylics, water colors, etc. prohibited under the category

"paints"? Does "paints" include wood stains and fingernail polish? Is a portable outdoor barbecue grill, with or without a motor-driven rotisserie unit, within the category of "household appliances"? A fertile mind, with seventy thousand articles to work with and only fourteen categories in which to place them, could no doubt extend this list of perplexities ad infinitum.

It can be seen that public confusion as to the meaning of this act is well justified. That same lack of understanding exists even with law enforcement personnel. If the top law enforcement officer in the largest city in the state cannot definitely identify the prohibited articles, how can it be argued that the act is not vague? Citizens of this state are guaranteed, both under the U.S. and Arkansas Constitutions, the right to clear notice and fair warning of prohibited conduct before they can be subjected to loss of liberty. Act 135 does not satisfy the basic principle that no man shall be held criminally responsible for conduct which he could not reasonably understand to be prohibited. From the record herein and from the argument of counsel it would clearly appear that the ordinary citizen is incapable of determining what is prohibited and what is not under Act 135.

Appellees make a vigorous argument that the issues presented in this case have already been decided contrary to the contentions of Appellants in the following cases: *H. V. Hickenbothan* v. *Williams,* 227 Ark. 126, 296 S.W.2d 897 (1957); *Green Star Supermarkets, Inc.* v. *Stacy,* 242 Ark. 54, 411 S.W.2d 871 (1967); *Lockwood* v. *State,* 249 Ark. 941, 462 S.W.2d 465 (1971); *Bill Dyer Supply Company, Inc.* v. *State,* 255 Ark. 613, 502 S.W.2d 496 (1973).

Act 135 has been before this court only one time before. *Bill Dyer, supra.* The issue of vagueness was not considered in *Bill Dyer,* and the case provides no precedent on this issue. *Hickenbothan, Green Star,* and *Lockwood, supra,* had under consideration the early Sunday closing law and city ordinances which provided an entirely different legislative scheme than Act 135. These schemes generally provided for the prohibition of all Sunday sales with certain well-defined exemptions. Such schemes are not vague for they clearly and

specifically define the commodity exempted. Act 135 prohibits the sale of fourteen broad categories of articles and then provides certain exemptions. In effect, it creates two classes of exempt articles, those not included in the prohibition and those included in the specific exemptions. This difference, in our view, clearly distinguishes not only the Arkansas cases cited by Appellees but also *McGowan, supra.* Moreover, the vagueness issue, though discussed in *McGowan,* was finally not considered because it was not properly raised in the Maryland Court of Appeals.

A statute similar to Act 135 prohibiting Sunday sales of a broad category of commodities was tested for vagueness and found wanting in *State* v. *Target Stores, Inc.,* 279 Minn. 447, 156 N.W.2d 908 (1968).

The Connecticut and Utah Sunday closing laws were tested for vagueness in *State of Connecticut* v. *Anonymous,* 33 Conn. Super. 55, 364 A.2d 244 (1976); *State* v. *Anonymous,* 33 Conn. Super. 141, 366 A.2d 200 (1976); and *Skaggs Drug Centers, Inc.* v. *Ashley,* 26 Utah 2d 38, 484 P.2d 723 (1971). In these cases the statutes were so riddled with exceptions that the Courts held that they were not sufficiently intelligible to pass the vagueness test.

This court holds that Appellants have clearly demonstrated that Act 135 fails to meet the minimal requirements of due process in regard to vagueness and that both of the evils inherent in vague laws, as mentioned in *Grayned, supra,* are present in Act 135.

The second question presented is whether Act 135 denies equal protection of the law. This issue was considered by this court in *Bill Dyer, supra,* albeit perfunctorily. The rules involved in testing Sunday closing laws were fully discussed in the 1961 landmark cases of *McGowan, Krown Kosher, Two Guys,* and *Braunfeld, supra,* and have been further developed in the scoreboard of cases referred to in *Caldor, supra.* As will be seen, state cases go both ways on the equal protection challenge. In *Bill Dyer* this court found that on its face Act 135 did not contravene equal protection, but held that the constitutional challenge failed for want of

proof. In light of the strong presumptions favoring constitutionality, we must likewise hold that Appellants have not clearly demonstrated, to the extent necessary, that Act 135 violates the equal protection clauses of either the U.S. or Arkansas Constitutions.

Chief Justice Warren established the broad perimeters of state discretion in the following language in *McGowan, supra*:

> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the States' objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

We simply hold on this issue that Appellants have not borne the strong burden required of them sufficient to overturn Act 135.

In light of our conclusion that Act 135 is unconstitutionally vague, it is not necessary for us to address questions 3 and 4 raised by the Appellants. Act 135 contains a severability clause, but we find that all of its provisions are so mutually connected with and dependent on Section 2 that the legislature would not have adopted the residue independently. The act is not severable and the entire act must fall on account of the invalidity of Section 2. *Pryor* v. *Lowe,* 258 Ark. 188, 523 S.W.2d 199 (1975); *Borchert* v. *State,* 248 Ark. 1043, 460 S.W.2d 28 (1970).

For the reasons stated, the Decree of the Chancery Court

is reversed and the action remanded with directions to enter a Decree in accordance with the views herein expressed.

Reversed and remanded, with directions.

GEORGE ROSE SMITH, J., not participating.