The Honorable Jim Argue, Jr. State Representative 5905 Forest Place, #210 Little Rock, Arkansas 72207-5245
Dear Representative Argue:
This is in response to your request for an opinion on four questions concerning the calling of a constitutional convention in Arkansas. Your questions are as follows:
 1. Can the Legislature and/or Governor call a constitutional convention without a vote of the people? If a vote of the people is required, could the vote to call a convention be taken in a special election?
 2. Can delegates to a constitutional convention be appointed by the Governor and/or Legislature, rather than elected? If election is required, can they be elected in a special election?
 3. Can the vote by the people to approve or reject a proposed new constitutional document be held in a special election?
 4. Our current constitution authorizes the Legislature to refer three constitutional amendments to the people each regular session. Could the Legislature refer an amendment to the people that would amend our current Constitution in its entirety?
The subject of constitutional conventions is not specifically addressed by any provision of the Constitution of 1874. Most of your questions, with the exception of question four are covered by existing legislation.See A.C.A. §§ 7-9-301 to -312 (Repl. 1993). I assume, however, that you are aware of this and that since the legislature is now in session, and has the authority to amend or enact new legislation, your questions inquire about constitutional or fundamental, rather than statutory, prohibitions.
I must note additionally that your questions, at least the constitutional aspect of your questions, are not squarely addressed by any Arkansas law. I will thus discuss the most apposite Arkansas law on point, and where appropriate, will look to the law of other jurisdiction for guidance, as the Arkansas Supreme Court might do, were it faced with the questions presented. See generally Brichett v. Tuf-Nut GarmentManufacturing Co., 205 Ark. 483, 169 S.W.2d 574 (1943) (where a case presents a new question to the Supreme Court, decisions from other jurisdictions are persuasive, but not controlling). Of course, predicting what that tribunal would hold in such an instance is often an uncertain business. I will thus give you my best legal analysis on the questions posed, based upon existing legal precedent, but must note that the resolution of these questions will ultimately have to be provided by a court of competent jurisdiction.
A discussion of the most relevant Arkansas case should be helpful before addressing your specific questions. That case is Pryor v. Lowe,258 Ark. 188, 523 S.W.2d 199 (1975). In Pryor, the validity of a so-called "limited constitutional convention" was at issue. The legislature in 1975 passed Act 16 of 1975 which created a constitutional convention (without submitting the question of calling it to the people) to be composed of thirty-five members (twenty-seven appointed by the Governor, five from the membership of the House of Representatives and three from the membership of the Senate). The proposed constitution drafted by the "convention" was to be submitted to the people at a special election. In addition, the act set out a list of articles and amendments in the existing constitution and provided that those provisions "shall be contained within the proposed Constitution recommended by the convention in the same form and language as they presently exist. . . ."
The Arkansas Supreme Court struck down the "limited constitutional convention" on the grounds that the "limitations placed on the delegates" by Act 16, meaning the restriction as to which articles and amendments must be left unaltered, rendered the act void, at least where the limitations had not been "ratifi[ed] . . . by the electorate. . . ." The court based its holding on two provisions of the "Bill of Rights" in the Arkansas Constitution, article 2, sections 1 and 29, which provide, respectively, as follows:
 § 1. Source of Power. All political power is inherent in the people and government is instituted for their protection, security and benefit and they have the right to alter, reform or abolish the same in such manner as they may think proper.
 § 29. This enumeration of rights shall not be construed to deny or disparage others retained by the people and to guard against any encroachments on the rights herein retained, or any transgression of any of the higher powers herein delegated, we declare that everything in this article is excepted out of the general powers of the government, and shall forever remain inviolate; and that all laws contrary thereto, or to the other provisions herein contained, shall be void.
The court first noted that in Harvey v. Ridgeway, 248 Ark. 35,450 S.W.2d 281 (1970), it was held that the position of delegate to a constitutional convention is derived from the power inherent in the people as set forth in article 2, § 1, and such delegate is "an agent of the people `for the purpose of acting in their stead in the exercise of their inherent power in working out the substance, form and content of a constitution to be submitted to all the people of Arkansas for their approval or rejection.'" 248 Ark. at 47-48. The court thus reasoned that because this was true it "logically follows that any limitation upon the exercise of the power by the General Assembly, without a ratification thereof by the electorate, is prohibited by the last section of the Bill of Rights, Art. 2, § 29. . . ." 258 Ark. at 192. The court restricted its holding to this ground, and found that because this holding disposed of the litigation, it was unnecessary to discuss the other issues argued by the parties, which issues presumably included: 1) whether the legislature could call the convention without a vote of the people; 2) whether the delegates could be appointed rather than elected; and 3) whether the matter could be presented at a special rather than a general election. The questions the court left unanswered are the questions which comprise your first three inquiries.
In response to your first question[1] it should be noted that existing legislation requires the submission of the question of calling a constitutional convention to the electorate. See A.C.A. § 7-9-301 (Repl. 1993). If the legislature seeks to amend or repeal this requirement, and itself call into being a constitutional convention, the question not resolved in Pryor v. Lowe will likely again be presented to the Court.
The concurring and dissenting opinions in Pryor v. Lowe, are enlightening, if not precedential, on the question. Justice Fogleman, concurring, stated that he could find no legal precedent anywhere holding valid the procedures outlined by Act 16 of 1975 where: 1)there was no call of a convention or ratification of the call; 2) none of the "delegates" were elected by the people; 3) there is a legislative limitation on the extent to which "revision" is to be considered by the "convention"; and 4) the work product of the "convention" is to be submitted at a special election. The dissenting justice, Justice Harris, who of course disagreed with the majority opinion, was very straightforward in his characterization of it. He stated:
 It appears that the majority reach their conclusions principally upon two premises, viz., that the legislature has no authority under the Constitution to call a constitutional convention without such call being ratified by the people, and the limits set upon the authority of the proposed convention are a violation of our Constitution. In addition, the citing of Harvey v. Ridgeway, 248 Ark. 35, 450 S.W.2d 281, clearly implies that the court is holding that delegates must be elected, and that the appointment of delegates by the Governor and General Assembly conflicts with constitutional requirements.
258 Ark. at 196 (Harris, J. dissenting).
The dissenting Justice in Pryor v. Lowe clearly felt that the majority was troubled not only by the limited subject matter of the convention, but by the fact that the electorate had not authorized the call. The majority expressly held that the subject matter of a convention could not be limited without authorization by the electorate. The opinions in Pryorv. Lowe can, therefore be interpreted to suggest that the Court, in 1975, would have held that only the people can call a constitutional convention had they reached this question. I would emphasize, however, that this conclusion is not compelled by the actual language of the majority opinion in the case.
The courts of other jurisdictions where there is no constitutional provision governing the call of a convention appear to be split on the question. See Bates v. Edwards, 294 So.2d 532 (La. 1974) (legislature can call a constitutional convention without a vote of the people); In ReOpinion to the Governor, 55 R.I. 56, 178 A. 433 (1935) (no vote needed); and contra, Bennett v. Jackson, 186 Ind. 533, 116 N.E. 921 (1917) (vote required prior to call of constitutional convention). The primary disagreement between the decisions focuses upon the exact nature of the power being exercised by the legislature. In most states, as in Arkansas, state constitutions are often said to be a "limitation on and not a grant of powers" to the legislative branch. See, e.g., Wells v. Purcell,267 Ark. 456, 592 S.W.2d 100 (1979); Jones v. Mears, 256 Ark. 825,510 S.W.2d 857 (1974); and Berry v. Gordon, 237 Ark. 547, 376 S.W.2d 279
(1964). That is, the legislature can exercise any power which is not expressly denied it by the state or federal constitutions. Hookerv. Parkin, 235 Ark. 858, 357 S.W.2d 534 (1962). Where the constitution is silent upon some point, as here with the calling of constitutional conventions, one view is that the legislature is thus unconstrained, and may call a convention without a vote of the electorate, because it is not expressly forbidden to do so by the Constitution. The contrary view is that when the legislature undertakes to call a constitutional convention, it is not acting in its ordinary legislative capacity. It is functioning rather as a mere agent of the people, to discover their wishes on the topic.
Early Arkansas cases have recognized this dichotomy of legislative power, and have held that the General Assembly, when exercising its constitutional power to "amend" the Constitution (see art. 19, § 22), does not act in its "ordinary legislative capacity," but is exercising a "higher" or specific power. See Eason v. State, 11 Ark. 481 (1851). In either capacity, the legislature cannot transcend the provisions of the Arkansas Bill of Rights. Id. Later Arkansas cases have stated that in exercising its authority to amend the constitution, the legislature acts as a "constitutional convention" expressing the will of the sovereign people. See Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976) andMitchell v. Hopper, 153 Ark. 515, 241 S.W. 10 (1922). It is thus conceivable that the Arkansas Supreme Court would focus on the nature of the power being exercised and hold that the calling of a constitutional convention is not a power which has been delegated to the General Assembly under our Constitution.
On the other hand, it may be argued that because the Constitution expressly authorizes legislative referral of amendments, it is consistent to interpret the Constitution to permit the legislature to call a constitutional convention as well. In each case, the General Assembly initiates action which will ultimately be presented to the people for their adoption or rejection. Because this would be a case of first impression to the Supreme Court, however, it is inherently speculative to offer a definitive prediction as to how such a case would be decided. The Court might be persuaded to extend the implications of the Pryor case and hold that only the people, by election, have the power to call a constitutional convention. The Court might, however, elect to follow the majority of states where the issue has been addressed and hold that the legislature may convene such a body as long as the subject matter to be considered is not unconstitutionally limited under Pryor.
The second part of your first question is whether a vote of the people on the question of whether to call a constitutional convention could be held at a special election. It should be noted initially that the existing Arkansas legislation requires the submission of this question to be at a general election. See A.C.A. § 7-9-301 (Repl. 1993). Whether the legislature could amend this legislation or enact new legislation requiring the question to be presented at a special election has also not been addressed by the Arkansas Supreme Court, and I have found no analogous cases from other jurisdictions discussing the legality of the same. This is thus a question which must ultimately be decided by a court of competent jurisdiction.
It should be noted, however, that there is historical precedent for the submission to the electorate of the question of whether the final product of a constitutional convention (a proposed constitution) should be presented to the voters at a special or general election. In 1978, such a question was presented to the voters concerning the proposed constitution of 1980.[2] The Arkansas Supreme Court in Riviere v. Wells,270 Ark. 206, 604 S.W.2d 560 (1980) in dicta, upheld the choice of election dates given the electorate, indicating that as long as the electorate approved it, it would fall within the tests imposed in Pryor v. Lowe.[3]
We thus know, at least, that the people themselves have the right, just as they would have had the right to limit the subject matter of a convention under Pryor, to choose to vote on the question of adoption of a constitution at a special election. This, however, does not precisely address the question of whether the General Assembly could, on its own motion, submit the question of calling the convention at a special election. The legislature in taking the initial step, cannot, as a practical matter, consult the people on which election they wish to employ to express their initial sentiments. It appears, therefore, from a reading of Wells, that the submission of the question at a special election may be questionable. The court in Wells characterized the submission of the question at a special election as a "limitation on the submission of the convention's product." The court was cognizant enough of the restrictions on the general assembly's power to cite Pryor v.Lowe. I cannot conclude, in light of the tenor of this decision, that the general assembly has the unqualified right to choose a special election for the people. Because the choice with reference to the initial polling of the people cannot be ratified by them, the Arkansas Supreme Court might hold that the question must be submitted at a general election. Additionally, the legislature's analogous authority over constitutional amendments under art. 19, § 22, under which it operates as a "constitutional convention" provides for the submission of such amendments only at general elections. I must note, however, that in many instances, in other states, the question of whether to call a constitutional convention has been presented to the voters in a special election. I have thus found no authority, other than the dicta mentioned above, for an absolute prohibition against the submission of this question at a special election. The question, like the first, is therefore best left to judicial determination.
Your second question is whether delegates to a constitutional convention can be appointed by the Governor and/or legislature, rather than elected. I should note that current law provides for the delegates to be elected from existing house of representative districts, for a total of one hundred delegates. See A.C.A. § 7-9-303 (Repl. 1993). The question of whether, as a constitutional matter, delegates must be elected rather than appointed, has not been squarely addressed by the Arkansas Supreme Court. The court in Pryor v. Lowe found it unnecessary to address this question, although the dissent felt that the majority, by citing Harveyv. Ridgeway, was holding the delegates must be elected. The concurring justice in Pryor certainly felt the delegates must be elected. The majority opinion did refer to the language in Harvey stating that a delegate is an "agent of the people" for the purpose of acting in their stead in the exercise of their inherent power in working out the substance, form and content of a constitution to be submitted to all the people of Arkansas for their approval or rejection. The court in Harvey
cited language from another jurisdiction indicating that the delegates are agents of the people themselves, not of the legislature. See Harvey,supra, at 43, citing Chenault v. Carter, 332 S.W.2d 623 (Ky. 1960). Seealso Berry v. Bellows, 30 Ark. 198 at 203. Does the legislature or the Governor have authority to appoint agents for the people through which the people will exercise their inherent rights? Two cases from other jurisdictions indicate that this is constitutionally permissible. SeeSmith v. Cenarussa, 93 Idaho 818, 475 P.2d 11 (1970), and Gatewood v.Matthews, 403 S.W.2d 716 (Ky. 1966). See also generally, Wheeler v. Boardof Trustees of Fargo Consolidated School District., 200 Ga. 323,37 S.E.2d 322 (1946). In each of the first two cases cited, the body which drafted the proposed constitutions were made up of appointed officers. InSmith a commission was established by the legislature to undertake this task, and in Gatewood, the constitutional officers appointed a "constitution revision assembly." Each state had constitutional provisions addressing the calling and conducting of constitutional conventions. Each court held that these stated methods were not exclusive, and the proposal of a new constitution could be presented to the people through the commission and assembly provided for in those states. The Arkansas Supreme Court of course is not bound by these decisions and might choose to adopt what appears to be the minority view represented by Bennett v. Jackson, supra, that calling a constitutional convention is not a "legislative" act and therefore not authorized by the Constitution's grant of legislative powers. In this event, the Court would likely hold, consistent with the majority in In Re Opinion to theGovernor, , supra, where it was said:
 A constitutional convention is an assembly of the people themselves acting through their duly elected delegates. The delegates in such an assembly must therefore come from the people who choose them for this high purpose and this purpose alone. They cannot be imposed upon the convention by any other authority. Neither the Legislature nor any other department of the government has the power to select delegates to such a convention.
178 A. at 452.
The second part of your second question is whether, if elected delegates are required, they could be elected at a special election. I should note that current law requires the delegates to be elected at a general election. See A.C.A. § 7-9-302 (Repl. 1993). Since delegates are ordinarily selected at the same election which authorizes the call, this question, as a practical matter, turns on whether the call can be authorized at a special election. The analysis above in this regard is therefore equally applicable here. Additionally, if the submission of the question of calling a constitutional convention at special election may be construed to be a "limitation" on the people's inherent rights (seeRiviere v. Wells, supra), it would appear that a similar issue would arise with regard to the election of delegates at a special election. I note again however, that other than this practicality, and the dicta inWells, I have found no express prohibition against the use of a special election to elect these delegates. In fact, one case from Nebraska has expressly upheld the election of delegates at a special election. SeeBaker v. Moorhead, 174 N.W. 430 (Neb. 1919). Thus, again, this is a question which will ultimately have to be decided by a court.
Your third question is whether the vote by the people to approve or reject a proposed new constitution could be held in a special election. Existing law provides for the question to be submitted at a general election. See A.C.A. § 7-9-310 (Repl. 1993). It is my opinion, based upon the reasoning above, including the Wells decision, that the legislature `s authority to submit this question to the voters at a special election, without ratification of this choice of election dates by the electorate is questionable.
It would appear, additionally, that the submission of the question at a general election would be more in accord with the following passage fromJameson on Constitutional Conventions (a passage cited with approval inWells):
 In determining the manner of submitting Constitutions to the people, two things should be kept prominently and constantly in view: first, the obtaining, completely and as far as possible in detail, of the public will; and secondly, convenience — the latter, however, being a consideration of inferior importance, when compared with the former.
Jameson on Constitutional Conventions, (3rd Ed. 1873) § 514, cited at270 Ark. 215.
In summary, as to the issues raised in your first three questions, the safest course to pursue, constitutionally, is to opt for the broadest application of popular election as is called for by the existing statutory scheme. Due to the fact that the Arkansas Supreme Court has never addressed the precise questions at issue, however, and because other jurisdictions are split on these questions, it is impossible for me to give you definitive legal guidance. It appears that the Arkansas Supreme Court could decide these issues either way, depending upon the analysis it finds most persuasive. I cannot, however, in light of the absence of Arkansas precedent and the differing opinions of other states, conclude under current state of the law that the actions you propose would be plainly unconstitutional.
Your fourth and final question is whether the legislature could, as one of the three constitutional amendments it is authorized to refer to the people for adoption at each regular session under Arkansas Constitution, art. 19, § 22, refer an "amendment" which amends the current constitution in its entirety.
It is my opinion that the answer to this question is "no."
Article 19, § 22 provides as follows:
 Either branch of the General Assembly at a regular session thereof may propose amendments to this Constitution, and, if the same be agreed to by a majority of all members elected to each house, such proposed amendments shall be entered on the journals with the yeas and nays, and published in at least one newspaper in each county, where a newspaper is published, for six months immediately preceding the next general election of Senators and Representatives, at which time the same shall be submitted to the electors of the State for approval or rejection; and if a majority of the electors voting at such election adopt such amendments the same shall become a part of this Constitution, but no more than three amendments shall be proposed or submitted at the same time. They shall be so submitted as to enable the electors to vote on each amendment separately. [Emphasis added.]
It can be argued from the language of this section alone that the legislature cannot propose an entirely new constitution through the amendment process. The section contemplates that amendments shall become "a part of [the] Constitution," and does not envision an entirely new constitution. The General Assembly is strictly limited to only three amendments. This fact is evidence of the drafter's intent not to allow more expansive revisions at any one election. In addition, the section requires that the amendments be submitted so that the electors can vote on each amendment separately, and thus would not appear to authorize a complete revision through the amendment process. The courts of many other states agree. See Opinion of the Justices, 264 A.2d 342 (Del. 1970);Holmes v. Appling, 237 Ore. 546, 392 P.2d 636 (1964); McFadden v.Jordan, 32 Cal.2d 330, 196 P.2d 787 (1948), cert. denied 336 U.S. 918
(1949); and Ellingham v. Dye, 178 Ind. 336, 99 N.E. 1 (1912), app. dis.231 U.S. 250 (1913). But see, Wheeler v. Board of Trustees of FargoConsolidated School District, 200 Ga. 323, 37 S.E.2d 322 (1946). It is therefore my opinion that in all likelihood the answer to your fourth question is "no."
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] Although your question inquires whether the legislature and/or "Governor" could call a constitutional convention, my analysis is focused on legislative action, as the authorities seem to be in agreement that the Governor is not the proper official to exercise this power. See In ReOpinion to the Governor, 55 R.I. 56, 178 A. 433, 451 (1935); Jameson on Constitutional Conventions § 120 (3rd Ed. 1873); and generally 16 C.J.S.Constitutional Law, § 8.
[2] The people voted to have the proposed constitution presented to them in a general election. See also Op. Att'y Gen. 77-139 (concluding that this option given the people as to which election the constitution should be presented was constitutional).
[3] Justice Fogleman, the concurring justice in Pryor v. Lowe, wrote the majority opinion.