Charles E. COBB and Wife, Shirley Cobb, Appellants,

v.

Lawrence R. DUNLAP and Wife, Mary E. Dunlap, Appellees.

No. 13–82–061–CV.

Court of Appeals of Texas, Corpus Christi.

June 23, 1983.

Rehearing Denied Sept. 15, 1983.

B. Mills Latham, Corpus Christi, for appellants.

Stephen P. Dietz, Ewers, Toothaker, Ewers, Abbott, Talbot, Hamilton & Jarvis, McAllen, for appellees.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

YOUNG, Justice.

This is a suit instituted by appellees alleging violations of the Deceptive Trade Practices Act, Tex.Bus. & Comm.Code Ann., 17.-41 et seq (Vernon Supp.1983) ("DTPA"), arising out of the sale of real property, namely a mobile home park, in which appellants were the sellers and appellees the purchasers. We affirm.

In response to special issues, the jury found as follows:

1. that appellants represented to appellees that the water system servicing the property in question had approval, or characteristics, or uses, benefits, or quantities which it did not have;

2. that appellants failed to disclose to appellees the defects or deficiencies in the water system;

3. that such failure was a false, misleading, or deceptive act or practice;

4. that such failure was a proximate cause of the damages suffered by appellees;

5. that at the time of the sale appellants knew of the defects or discrepancies in the water system;

6. that such failure to disclose concerned a material fact in appellees' decision to purchase the property for the price paid;

7. that such failure to disclose was made with the intent that appellees rely upon the belief that the water system was free of defects or discrepancies, and that appellees did so rely;

8. that appellees' reliance caused them pecuniary loss.

The amount by which appellees were damaged was found to be $85,000.00. In rendering judgment, the trial court trebled this amount. DTPA, 17.50(b)(1) and awarded attorney's fees.

In their first point of error appellants attack the finding regarding their failure to disclose as a basis for recovering under the DTPA for this transaction. It is their contention in support thereof that 17.46(b)(23), which specifically includes failure to disclose amongst the "laundry list" of deceptive acts and practices, was added to the DTPA by amendment in 1979, and that the transaction in question took place in 1978.

It is true that the provisions of the DTPA which govern a cause of action are those which were in existence at the time the alleged deceptive acts occurred. *Riverside National Bank v. Lewis,* 603 S.W.2d 169, 172 (Tex.1980). As noted in 17.46(b), acts constituting false or deceptive acts or practices are not limited to those enumerated therein. The "failure to disclose" violation was considered to be included within the ambit of 17.46(a) before its inclusion in the "laundry list." *Robinson v. Preston Chrysler-Plymouth, Inc.,* 633 S.W.2d 500, 502 n. 1 (Tex.1982); *Sam Montgomery Oldsmobile Co. v. Johnson,* 624 S.W.2d 237, 240 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). Since failure to disclose was not listed under section 17.46(b) at the time the

act occurred, it was incumbent upon appellees to secure a finding that such was, in fact, deceptive. *Spradling v. Williams,* 566 S.W.2d 561, 564 (Tex.1978); *Staley v. Terns Service Co.,* 595 S.W.2d 882, 884 (Tex.Civ. App.—Waco 1980, writ dism'd). Such was done. Appellants' first point of error is overruled.

In point of error number four, appellants challenge the legal and factual sufficiency of the evidence to support the findings that they failed to disclose the defects or discrepancies of the water system to appellees, and that such failure constituted a false, misleading or deceptive act or practice. These points will be reviewed, respectively, in accordance with the now familiar guidelines set forth in *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773, 777 (Tex.1975) ("no evidence" points) and *In re King's Estate,* 150 Tex. 622, 244 S.W.2d 660, 661 (1952) ("insufficient evidence" points).

Appellee Lawrence Dunlap testified that when he first went to look at the property with the realtor with whom it was listed, he was told that the owners, appellants, did not want prospective buyers "nosing around too much because they [appellants] didn't want the people in the park to know that the park was for sale." Dunlap conducted his initial inspection accordingly.

During this first visit, Dunlap talked with Mrs. Cobb, but was not given any information about the property at that time. He had a subsequent meeting with appellants at their home at the trailer park. He was told that the property was capable of being expanded from 30 to 106 spaces. This was demonstrated on a chart prepared by Cobb, and introduced into evidence. It was Dunlap's recollection that Cobb informed him that the cost of such expansion, including septic tank, water lines, electricity, road, and "everything" would be approximately $15,700.00.

When he asked about the water, he was told by both appellants, "almost in unison", that the water was free. Cobb then explained that the water came from a canal and that the park had a 13,000 gallon reser-

voir. Nothing more was said about the water system. Dunlap did not inspect the water processing plant because, according to him, he trusted Cobb and took it for granted that appellants were being "on the up and up" with him. He claimed never to have been told by Cobb that the system had been inspected by the State Health Department and deemed inadequate.

Appellees closed the deal for the purchase of the property in April 1978, and moved in during July. When an inspector from the State Health Department came in November, Dunlap was told that the system was deficient and needed correcting.

Cobb's testimony differed in parts from that of Dunlap, and was, at times, contradictory. He admitted that when he started to develop the park in 1976, he put in his own water system since municipal water was not available, but that he did not submit the plans and specifications for the system to the Texas Department of Health for approval. In January 1978, he received a letter from the State outlining the deficiencies and defects in the water system. He prepared the diagram for appellees showing the plans for expanding the park to 106 spaces. He testified that he informed appellees that the water system would need expanding to handle an enlarged park, and gave an estimate of $15,-000.00 to $20,000.00, which included the cost of the septic tanks, patios, and water lines. Cobb claims he told Dunlap that a processing "laboratory" would need to be added, but never gave him an estimate of its cost because he did not know himself. He then admitted, however, that he had previously been given an estimate of $20,000.00 for a laboratory alone by a man whom he considered to be "an authority." He did not pass this information on to appellees.

■ As stated by this Court in *Salazar v. Hill* (Tex.Civ.App.1977, writ ref'd n.r.e.):

"It is within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony, and to resolve the conflicts and inconsistencies in the testimony of one witness as well as different witnesses. Further it is within the trial court's province to believe one witness and disbelieve another, or to believe part of the testimony of a witness and disbelieve any other part." 551 S.W.2d 518, 520.

About the finding that appellants' failure to disclose constituted a "false, misleading or deceptive act or practice," the jury was instructed, absent objection by appellants, that that phrase was applicable, inter alia, to "conduct [which] had the capacity or tendency to mislead," and to "information that could affect the decision to buy (or lease), or that would cure a misunderstanding that would result either from statements or representations made or from other conduct." Dunlap stated that he had been put under the impression by Cobb that the water system existing at the time of purchase could handle the expansion to 106 spaces.

■ Appellees sold other property to acquire the money to invest in the park. Dunlap testified that he and his wife invested "everything they had" in the purchase price. He felt that it was important to know the full potential of the business and the full capital expenditure required to realize that potential, and that had he known at the time what he subsequently learned about the water system, that such information would have affected his decision regarding the price he was willing to pay, and that he did in fact pay. The evidence is clearly sufficient to support these two challenged findings, and appellants fourth point of error is overruled.

■ In their second point of error appellants complain of the failure of the jury to find that any misrepresentation about approval, characteristics, uses, benefits or quantities was a producing cause of any adverse effect upon appellees. See *City of Marshall, Texas v. Bryant Air Conditioning Co.*, 650 F.2d 724, 726 (5th Cir.1981); *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290, 298 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). Similarly, in their third point of error the legal and factual sufficiency of the evidence to support the finding that misrepresentations were made is

challenged. Due to our disposition of points one and four, these points need not be addressed. Each act, i.e., misrepresentation and failure to disclose, constitutes a DTPA violation, the former being expressly prohibited,[1] the latter having been found to be a false, misleading or deceptive act or practice. Liability under the statute may be predicated upon either. Having sustained the findings regarding the one, we hold that the other is not essential to the judgment. These two points of error are overruled.

Appellants next assert, in their fifth point, that the trial court committed error in rendering judgment based upon common law fraud in that failure to disclose does not constitute fraud. The basis of this point is the jury findings that appellants knew of the defects or discrepancies in the water system, that these concerned a material fact in the decision to purchase the property for the price paid, that appellants intended that appellees rely upon their beliefs, and that their reliance occasioned pecuniary loss. We are of the opinion that each of these findings support judgment rendered on the DTPA, and not upon common law fraud. Knowledge is an essential element to a failure to disclose violation. *Robinson v. Preston Chrysler-Plymouth, Inc.,* supra, 633 S.W.2d at 502. Whether it concerned a material fact in the decision to purchase the property for the price paid is an element in determining whether a "false, misleading or deceptive act or practice," as that phrase was defined to the jury, was committed. Finally, belief and reliance go toward a showing of factual causation of damages. See *Woo v. Great Southwestern Acceptance Corp.,* supra, 565 S.W.2d at 298. The fifth point is overruled.

Appellants, in their sixth point, also challenge the factual and legal sufficiency of the evidence to support the answers to special issues six, seven and eight. We have considered this contention in light of the entire record, including the testimony of Dunlap, recited above, and find point six to be meritless.

In their seventh and final point of error appellants assert that appellees' failure to comply with the statutory notice provision of section 17.50A renders the trial court's trebling of damages error. At the time this cause of action arose, 1978, the plaintiff's failure to comply with the thirty-day notice provision of section 17.50A was an affirmative defense.[2] *Gallery Datsun, Inc. v. Metcalf,* 630 S.W.2d 853, 854 (Tex. App.—Houston [1st Dist.] 1982, no writ); *Jim Walter Homes, Inc. v. Geffert,* 614 S.W.2d 843, 845 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). As such, the burden was upon appellants to affirmatively plead no notice, and their failure to do so results in a waiver of the defense. Tex.R. Civ.P. 94 (Vernon 1979); *Gallery Datsun, Inc. v. Metcalf,* supra. The seventh point is overruled.

The judgment of the trial court is affirmed.

---

1. 17.46(b)(5).

2. By amendment, 1979, that section was changed to make compliance with the notice requirement a "prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50...." (Vernon Supp.1983). See Goodfriend and Lynn, *Of White Knights and Black Knights: An Analysis of the 1979 Amendments to the Texas Deceptive Trade Practices Act,* 33 Sw.L.J. 941, 990 (1979).