**Ex Parte Mickey ROBBINS.**

No. 08–83–00077–CR.

Court of Appeals of Texas,
El Paso.

Oct. 19, 1983.

Michael Gibson, El Paso, for appellant.

Luther Jones, County Atty., El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

This is an appeal from a denial of habeas corpus relief in the district court below. Relator is presently awaiting trial for an alleged violation of Tex.Rev.Civ.Stat.Ann. art. 9001 (Vernon Supp.1982), the so-called "Blue Law." The district court rejected Relator's habeas corpus challenge to the constitutionality of the statute. We affirm.

Appellant is charged by information with having unlawfully offered to sell trousers to the general public on both a Saturday and consecutive Sunday in violation of Section 1 of Article 9001. Upon conviction, he would be subject to the criminal penalties provided for in Section 3. Relator contends that the statute infringes his constitutional right to equal protection in that it unlawfully discriminates against the single-item seller of merchandise. He further contends that this is a case of first impression. Conceding the uniformity of the case authority upholding the statute even in the face of equal protection challenges, he distinguishes those evaluations as arising out of civil injunctive proceedings. *Gibson Distributing Company, Inc. v. Downtown Development Association of El Paso, Inc.,* 572 S.W.2d 334 (Tex. 1978), appeal dismissed, 439 U.S. 1000, 99 S.Ct. 606, 58 L.Ed.2d 674 (1978); *Gibson Products Company, Inc. v. State,* 545 S.W.2d 128 (Tex.1976); *State v. Spartan's Industries, Inc.,* 447 S.W.2d 407 (Tex.1969). Relying upon *Crouch v. Craik,* 369 S.W.2d 311 (Tex.1963) for the ruling that the authority to interpret the Blue Laws in a criminal context rests solely with those appellate courts exercising criminal jurisdiction, he urges this court to reexamine the constitutionality issue with a stricter scrutiny justified by the prospect of criminal sanctions.

▆ Conceding the first-impression status of this case in this state, we find that the constitutional issues involved have been evaluated in a criminal context by the supreme arbiter of the Fourteenth Amendment in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

There, in an eight-to-one decision, the Supreme Court upheld the Maryland Blue Laws against a challenge lodged by several individuals who had been prosecuted, convicted and fined for violating its provisions. The sole dissent by Justice Douglas was based exclusively upon the statute's interference with religious freedoms embodied in the First Amendment. That issue is not before us. With regard to Relator's suggestion of stricter scrutiny of criminal provisions of the Blue Laws, we note that the Supreme Court has employed the same criteria in both civil and criminal cases. Three civil cases decided on the same day as McGowan upheld Pennsylvania and Massachusetts Blue Laws utilizing the same evaluative standards. *Gallagher v. Crown Kosher Super Market of Massachusetts,* 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961); *Two Guys from Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *Braunfeld v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961). See: Kushner, Toward the Central Meaning of Religious Liberty: Non-Sunday Sabbatarians and the Sunday Closing Cases Revisited, 35 Sw.L.J. 557 (1981). The first two were also eight-to-one decisions, Justice Douglas dissenting on First Amendment grounds. In the third, Justice Douglas continued his earlier dissenting theme, joined by Justices Stewart and Brennan. Justices Frankfurter and Harlan voted to remand for further evidentiary evaluation of the allegedly irrational or arbitrary nature of the statutory classification scheme. In any event, we have concluded from an examination of these cases and others cited below that strict scrutiny of the statute is not justified solely by the criminal nature of the provisions invoked.

▆ What then is the appropriate evaluative process and standard of review? The answer is well summarized in *Morey v. Doud,* 354 U.S. 457, 463–464, 77 S.Ct. 1344, 1349, 1 L.Ed.2d 1485, 1490 (1957):

1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws,

but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done *only when it is without reasonable basis and therefore is purely arbitrary.* [emphasis added].

2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality.

3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

4. One who assails the classification in such law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

See also *McGowan,* 366 U.S. at 425–426, 81 S.Ct. at 1104–1105, 6 L.Ed.2d at 399. The courts must examine three elements in an equal protection evaluation—the state purpose, the legislative means adopted to achieve the purpose and the individual rights or interests allegedly infringed. The degree of scrutiny applied in *McGowan* typifies the minimum standard traditionally applicable where the state purpose involves an exercise of police power over economic and social welfare *and* the interest allegedly infringed involves neither a fundamental right nor the interests of a suspect category. *Graham v. Richardson,* 403 U.S. 365, 371–372, 91 S.Ct. 1848, 1851–1852, 29 L.Ed.2d 534, 541–542 (1971); *United States v. Carolene Products Co.,* 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234, 1241–1242 (1938); *Yick Wo v. Hopkins,* 118 U.S. 356, 371, 6 S.Ct. 1064, 1072, 30 L.Ed. 220, 227 (1886). The equal protection clause goes no further than the prohibition of invidious discrimination. *Morey,* 354 U.S. at 463, 77 S.Ct. at 1348, 1 L.Ed.2d at 1490; *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955). The stricter standard of review requiring a compelling state interest and a greater degree of congruity between the purpose and the statutory means is reserved for those classification systems which, on their face or as applied, infringe upon fundamental interests embodied in the Bill of Rights or which have an uneven effect upon suspect categories of individuals historically subjected to invidious discrimination. *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491, 503 (1970).

■ In the present case, we are not confronted by an intrusion upon fundamental rights. Nor does the statutory scheme of Article 9001 produce an adverse consequence particularly visited upon any recognized suspect category. The express legislative purpose is to promote the health, recreation and welfare of the people of this state. Tex.Rev.Civ.Stat.Ann. art. 9001, sec. 4 (Vernon Supp.1982). Such a purpose has been consistently viewed as well within the regulatory authority of the individual states. *McGowan,* 366 U.S. at 426, 81 S.Ct. at 1105, 6 L.Ed.2d at 399. Given these observations, what does the minimum standard of review demand of the statutory classification scheme? It must be rationally related to the achievement of the legislative purpose. Imperfections, lack of mathematical precision in achieving the goal, some inequality of result from one citizen to the next, and the existence of alternative or more effective means do not invalidate the act. *Dandridge,* 397 U.S. at 485, 90 S.Ct. at 1161, 25 L.Ed.2d at 501–502; *Morey,* supra, *McGowan,* supra; *Tsosie v. Califano,* 630 F.2d 1328, 1338 (5th Cir.1980), cert. denied, sub nom. *Tosie v. Schweiker,* 451 U.S. 940, 101 S.Ct. 2022, 68 L.Ed.2d 328 (1981).

■ Relator has suggested that the Texas statute discriminates unfairly between single-item merchants dealing in restricted merchandise and larger multi-product businesses dealing in both restricted and unrestricted wares. That such an unequal result is produced by application of the statute does not destroy the saving observation that the statute does to some degree direct the weekend life styles of Texas citizens

toward what the legislature has legitimately determined to be in the best interest of their health and welfare. That it does so imperfectly or incompletely and that there is some inequality in the economic burden of such social engineering does not invalidate the act.

The Equal Protection Clause does not require that state regulatory statutes apply to all in the same business with absolute equality. Different effects upon persons engaged in the same or similar pursuits may be justified by differing characteristics of their business operations. *Morey,* 354 U.S. at 465–466, 77 S.Ct. at 1349–1350, 1 L.Ed.2d at 1491–1492. The distinct treatment or effect must be rationally related to the purpose of the statute and its effectuation. The line of distinction drawn by Relator in this case between the single-item merchant and the larger multi-faceted businesses is not unlike the retail-wholesale, professional-amateur or geographical distinctions upheld in cases such as *McGowan* and *Gallagher.* As stated in *McGowan:*

> The record is barren of any indication that this apparently reasonable basis does not exist, that the statutory distinctions are invidious, that local tradition and custom might not rationally call for this legislative treatment.

*McGowan,* 366 U.S. at 426, 81 S.Ct. at 1105, 6 L.Ed.2d at 399. The same is true here. The only proper relief for Relator and others in similar circumstances must be obtained from the legislature.

The judgment of the lower court denying relief is affirmed.