RETAIL MERCHANTS ASSOCIATION OF HOUSTON, INC., Appellant,

v.

HANDY DAN HARDWARE, INC., Appellee.

No. 01–84–0798–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 25, 1985.

Rehearing Denied Aug. 8, 1985.

Robert S. MacIntyre, Jr., David C. Bland, Jr., Baker, Brown, Sharman & Parker, Thomas R. Conner, Smith & Conner, Houston, Jim Mattox, Atty. Gen., Austin, John L. Minor, Jr., Asst. Atty. Gen., Houston, David R. Richards, Executive Asst. Atty. Gen., J. Patrick Wiseman, Asst. Atty. Gen., Austin, for appellant.

Linda L. Addison, Roger Townsend, Gerry Lowry, Fulbright & Jaworski, Houston, for appellee.

Jean Fleming, Powers Legal Foundation of America, Houston, amicus curiae.

David Crump, Legal Foundation of America, Houston, amicus curiae.

Before WARREN, DUGGAN and HOYT, JJ.

## OPINION

WARREN, Justice.

This case involves the constitutionality of article 9001 of the Texas Revised Civil Statutes, commonly called the Texas "Blue Law." The Texas Supreme Court has previously held the statute facially constitu-

tional against contentions similar to those made by appellees in this case. The trial court, however, found that it was not bound by the previous decisions because the records before those courts were not fully developed. The court below held the statute unconstitutional and refused appellant's application to permanently enjoin appellees from violating the statute. Our main question on appeal is thus whether the evidence adduced at trial established that the statute is unconstitutional. We hold that the evidence failed to establish the statute's unconstitutionality and therefore reverse and remand for cause for entry of an order permanently enjoining appellee from violating article 9001.

Appellant is an incorporated trade association whose members are engaged in retailing. Appellee is a chain retailer selling mainly hardware, building materials, tools, and supplies. A large percentage of the goods appellee offers for sale may not legally be sold on both a Saturday and Sunday of the same week because of the prohibitions of article 9001.

Article 9001 forbids the sale of various items on consecutive Saturdays and Sundays. The statute authorizes punishment by a fine up to $100 for the first offense and a larger fine for subsequent offenses. It also declares that the violation of the act is a public nuisance and allows any person to obtain injunctive relief to restrain a violation of the act. The law excepts sales for charitable, funeral or burial purposes, or of items sold in conjunction with real property.

Appellee admits violating the statute by allowing its employees to sell items listed in the statute on consecutive Saturdays and Sundays during November 1983.

In six related points of error, appellant contends that the trial court erred in concluding that article 9001 violated the fourteenth amendment of the United States Constitution, that it was not bound by previous Texas Blue Law decisions upholding the statute, and that changes in conditions since the statute's enactment caused the statute to become unconstitutional. Appel-

lant additionally contends that the trial court's findings of fact were irrelevant to the legal issues in the case. Appellant refers this court to numerous Texas decisions upholding the statute.

Appellee responds that article 9001 violates due process and equal protection provisions of the fourteenth amendment, that the statute is unconstitutionally vague, that the provisions of the statute making it a nuisance are unconstitutional because the sale of certain merchandise on consecutive Saturdays and Sundays is not harmful to health and public welfare and is not a public nuisance, and that the trial court's findings of fact are binding on this court since appellant did not challenge them on appeal. In its cross-points, appellee claims the trial court erred in *not* holding that the selective and discriminatory enforcement of the statute violates the equal protection clause, that the statute violates the Texas Constitution, that the statute's lack of proof requirements (that a defendant's act was a nuisance) violates the due process clause, and that the statute violates the interstate commerce clause. Finally, appellee contends that we are not bound by prior decisions of the Texas Supreme Court because those cases were not accompanied by fully developed records and because social and economic changes since the enactment of the statute render the provision unconstitutional.

The first Supreme Court of Texas decision analyzing the constitutionality of the Blue Law is *State v. Spartan's Industries, Inc.*, 447 S.W.2d 407 (Tex.1969), *appeal dism'd*, 397 U.S. 590, 90 S.Ct. 1359, 25 L.Ed.2d 596 (1970). The court in *Spartan's Industries* held that article 286a, Texas Penal Code (the predecessor to article 9001), was reasonably related to the public welfare, that the statute did not deny persons selling the prohibited items equal protection of the law, that the statute was not vague or indefinite, and that if the legislature may prohibit an act, it may authorize an injunction against that act. The court also restated the rule that a court may declare a statute unconstitutional only if

the statute arbitrarily interferes with legitimate activity in such a manner as to have no reasonable relation to the general welfare.

In *Gibson Products Co. v. State,* 545 S.W.2d 128 (Tex.1976), *cert. denied,* 431 U.S. 955, 97 S.Ct. 2677, 53 L.Ed.2d 272 (1977), the court considered an attack against the constitutionality of article 9001, alleging that the statute denied appellants due process and equal protection of the law. The court, with three members dissenting, reaffirmed the constitutionality of the Blue Law and noted its previous decision in *Spartan's Industries.*

In *Gibson Distributing Co. v. Downtown Development Association of El Paso, Inc.,* 572 S.W.2d 334 (Tex.), *appeal dism'd,* 439 U.S. 1000, 99 S.Ct. 606, 58 L.Ed.2d 674 (1978), Chief Justice Greenhill, writing for a unanimous court, followed the decisions in the two previous cases and considered the constitutionality of the statute settled. The court again held that the statute did not deny equal protection or due process to appellants and additionally held that the law was not preempted by the Sherman Anti-Trust Act and did not constitute an illegal restraint on trade.

Appellee acknowledges the holdings in *Spartan's Industries, Gibson Products,* and *Gibson Distributing,* but insists that neither the trial court nor this court is bound by those decisions because in each of those cases the appeals were taken directly from the trial court to the Texas Supreme Court under the provisions of article 1738a of the Texas Revised Civil Statutes, and were not accompanied by developed factual records. Appellee, on the other hand, adduced considerable evidence at trial, including various opinions and reports prepared by experts relating to the effect of the Blue Law on Texans, in order to fully develop a record demonstrating the unconstitutionality of the Blue Law.

■ We agree, as a general proposition, that the amount of evidence presented in a prior case, or the extent of changes in society since a statute's enactment or the date of the decision, may affect a decision's force as precedent and the validity of a statute previously upheld under constitutional attack. *See People v. Acme Markets, Inc.,* 37 N.Y.2d 326, 372 N.Y.S.2d 590, 334 N.E.2d 555, 558 (1975) (fully developed record); *Nashville, C. & St. L. Ry. v. Walters,* 294 U.S. 405, 415, 55 S.Ct. 486, 488, 79 L.Ed. 949 (1935) (changed factual conditions). The law is not static, and society demands our attentiveness to changes in the human environment. Nevertheless, as a constitutional principle, appellee retains the burden of establishing that the statute is unconstitutional under the established standards of judicial review. We must therefore determine whether the evidence presented in the trial court shows that the statute violates the Texas or United States Constitution.

At the hearing on the temporary injunction, the director of appellee's stores testified that his firm had difficulty complying with article 9001 because of his inability to determine what products fall within the statute's proscription, and that compliance with the Blue Law is costly in terms of lost business.

Appellee also provided the testimony of several expert witnesses. Professor Wilbur M. Cohen of the University of Texas, formerly Secretary of the United States Department of Health, Education, and Welfare, concluded that he could perceive no rational relationship between the statute's proscriptions and the health and welfare of the people of Texas.

Dr. Martin Christopher Moore-Ede, professor at Harvard Medical School, testified that although the Blue Law was aimed at promoting desirable social goals, it is a "clumsy, inequitable, and archaic way of achieving those goals." Dr. Moore-Ede, an authority on human adaptation to twenty-four hour day/night cycles, also testified that while he could find no "net positive effect" of the statute on health, welfare, and recreation, he did perceive a "net negative effect," including possible increases in pollution, possible increases in stress among family members, and inequities for two career/wage-earner households, stu-

dents, and households headed by working mothers. Dr. Moore-Ede admitted that he had performed no scientific study of the effects of the Blue Law on Texans and that he had reached his conclusion prior to gathering "documentation" on the relationship between the statute and the welfare of Texans.

Appellee also offered the deposition testimony of Dr. Leland Wooton, Associate Professor of Organizational Behavior at Southern Methodist University Business School. Dr. Wooton concluded that only 3.6 percent of the total number of employees in Texas are employed by businesses selling items regulated by the statute.

Dr. Wooton also identified various trends affecting the operation of the Blue Law. He noted that an increasing number of part-time workers results in fewer full-time employees working on the weekends and that the importance of the Blue Law in providing a day of rest to full-time workers has been diminished; that buying trends indicate development of an "unbalanced shopping pattern," shifting emphasis of shopping time to weekends; and that production trends indicate a shift to a service-oriented economy where productivity is enhanced by weekend work. Finally, Dr. Wooton noted a trend in retail diversification and the emergence of "super stores" selling a wide variety of both regulated and unregulated goods.

Additionally, Dr. Wooton directed the preparation of a survey, which was admitted into evidence, regarding Texas employment practices. From the survey, Dr. Wooton concluded that there was no statistically relevant relationship between a given firm's choice of whether to provide a day of rest to employees and whether it sold regulated or unregulated goods.

In rebuttal, appellant offered the testimony of George Lucas, Jr., assistant professor at Texas A & M University in the Department of Marketing. Dr. Lucas concluded that Dr. Wooton's survey had "serious methodological problems," and that it had little reliability as a scientific analysis of the effects of the Texas Blue Law on the health and welfare of Texans. Dr. Lucas did not express an opinion as to the relationship between the statute and its goal of providing a day of rest for the citizens of the state.

After considering the expert testimony and other evidence presented, the trial court issued a temporary injunction against appellee and set the cause for trial on the permanent injunction. By stipulation, all evidence produced at the temporary injunction hearing was carried forward to the trial on the permanent injunction. Additionally, appellee called various retailers to testify regarding the increasing importance of Sunday sales to their businesses and to consumers and the difficulty of complying with the statute because of its allegedly vague list of items.

On cross-examination, many of the witnesses admitted their economic interest in the outcome of the trial. Also, many witnesses admitted that dictionary definitions of goods listed in article 9001 were both sensible and unambiguous.

In rebuttal, appellant offered testimony of a retailer and of Dr. Norfleet Rivers, Jr., an expert in demographic and market research. Dr. Rives prepared critiques of the analyses prepared by appellee's experts, Drs. Wooton and Moore-Ede. Dr. Rives noted that Wooton's survey and statistics omitted a potentially large group of retailers from its scope: retail firms of one to four employees (comprising as much as forty-seven percent of the Texas retail sector). Like Dr. Lucas, Dr. Rives attacked the methodology of the survey directed by Dr. Wooton, noting that the sample was unrepresentative, that certain questions elicited potentially biased responses, and that no definitions were provided for terms used in the questionnaire. Dr. Rives concluded for various reasons that the Wooton and Moore-Ede findings were wholly without scientific validity.

After reviewing the evidence, the trial court made the following 38 findings of fact:

1. Of the total Texas work force of 7,821,000 people, about 14% are employed by retail establishments.

2. Approximately 25% of those people employed by retail establishments are with firms which sell merchandise regulated by Tex.Rev.Civ.Stat. Art. 9001 ("Article 9001" or the "Blue Law").

3. In 1984, 281,350 people in Texas were employed by businesses selling merchandise regulated under Article 9001.

4. The items regulated by Article 9001 are therefore sold by less than four percent of the Texas work force.

5. Those businesses selling merchandise regulated by Article 9001 are not required to close on either Saturday or Sunday.

6. Many businesses which are regulated by the Blue Law are in fact open seven days a week.

7. Among the retail businesses selling no merchandise regulated by the Blue Law, almost one-third are open for business on consecutive Saturdays and Sundays.

8. The Blue Law does not achieve a uniform day of rest for the workers of Texas.

9. The Blue Law does not achieve a uniform day of rest for the retail workers of Texas.

10. That almost all employers, irrespective of whether they sell merchandise regulated by Article 9001, provide their employees with a day of rest.

11. That the Blue Law is not the cause of most workers in Texas achieving at least one day of rest.

12. Merchandise classifications of Article 9001 bear no relationship to the achievement of a day of rest for workers each week in Texas.

13. There is no relationship between Article 9001 and the health, recreation and welfare of the people of the State of Texas.

14. The classifications of regulated items under Article 9001 are imprecise.

15. The imprecision of those classifications makes it impossible for many merchants to know whether their merchandising will comply with Article 9001.

16. Merchandise classifications of Article 9001 distinguish between items that are essentially identical, making the sale of some illegal without any rational relation to the actual or stated purposes of the act.

17. Substantial social and economic changes have occurred in Texas since Article 9001 was enacted in 1961.

18. When Article 9001 was enacted, some work patterns and patterns of family organization were different than they are today.

19. The increased divorce rate, the large number of women entering the work force, and the consequent growth in number of dual career families all have changed the fundamental practices of family structure that were uncontested assumptions when Article 9001 was enacted.

20. A larger percentage of families today have two or more wage earners than in 1961.

21. The percentage of males who are married and employed has decreased since 1968.

22. More women are now solely responsible for maintaining their families financially than in 1961.

23. There has been an increase of the entry into the work force of mothers with young children.

24. The restriction of certain items for sale on successive Saturdays and Sundays causes an inconvenience to many prospective purchasers in Texas.

25. Over fifty percent of those people employed in the retail sector work part-time.

26. Retail trade provides a particularly important source of income for people who work part-time, especially women.

27. Weekend shopping is important to many retail businesses in avoiding the drop in productivity caused by idle capacity.

28. For many businesses, Sunday is in fact the most productive day of the week.

29. Productivity concerns have also caused retailers to expand their merchandise assortment.

30. The strategy of scrambled merchandising or product diversification now practiced even in specialty stores is used more widely in the retail sector than it was in 1961.

31. There is little significant relationship between the type of merchandise sold by a retail establishment and a retailer's decision to be open on both Saturday and Sunday.

32. Neither the City of Houston nor Harris County is currently enforcing Article 9001, although some cities and counties in the State of Texas are currently enforcing the Blue Law.

33. Enforcement of Article 9001 in Harris County is carried out by private interest groups.

34. There are no hardware stores or home improvement stores among the members of the Retail Merchants Association (the "Association").

35. Several of the Association's own members are currently violating Article 9001.

36. The Association has not filed suit against any one of its members for violations of Article 9001.

37. The Association's purpose in bringing this suit is to prevent a competitive advantage by those selling merchandise seven days a week.

38. Sale of merchandise regulated by Article 9001 on consecutive Saturdays and Sundays does not have any discernible harmful effect upon the health, welfare or comfort of the people in a community in this State.

In addition, the court issued the following conclusions of law:

1. This Court is not bound by earlier decisions of the courts of the State of Texas upholding the constitutionality under the Constitution of the United States of the Blue Law, since the record was not completely developed in any of the prior cases.

2. A statute that is constitutional when enacted may become unconstitutional by a change in the conditions to which it is applied.

3. Article 9001 violates the Fourteenth Amendment to the Constitution of the United States because the classifications it imposes do not bear any rational relationship to the legitimate state interest of achieving a common day of rest for the workers of Texas under the actual facts to which it is applied.

4. Article 9001 violates the Fourteenth Amendment to the Constitution of the United States because it bears no rational relationship to any actual or articulated legitimate state interest.

5. Article 9001 violates the Fourteenth Amendment to the Constitution of the United States because it is not possible for a person to know in advance whether his proposed conduct will later be held to have been illegal.

6. Because the Legislature permits private enforcement of a nuisance and creates an irrebuttable presumption of the existence of that nuisance, irrespective of the actual facts, the defendant is deprived of an opportunity to defend the claim of nuisance and is deprived of its due process rights under the Fourteenth Amendment to the Constitution of the United States.

7. This Court does not reach the issue of whether the Blue Law is unconstitutional under the Constitution of the State of Texas.

8. The private enforcement scheme contemplated by Article 9001 does not in itself violate the Fourteenth Amendment to the Constitution of the United States, or Article I, Section 3, Section 19, or both [sic] of the Constitution of the State of Texas.

9. The operation of the Blue Law does not affect interstate commerce in any constitutionally objectionable manner.

Appellee contends that we are bound by the findings of fact made by the trial court because appellant has not specifically attacked the court's individual findings. As previously noted, however, our duty in reviewing the constitutionality of a provision is to determine whether the party challenging the enactment has carried its burden under the applicable standard of review. We thus turn to the various challenges asserted by appellee.

## SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION

■ We regard the standard of review in causes such as this to be different from that applied in cases involving fundamental rights. Fundamental rights or interests are those guaranteed by the Bill of Rights of the United States Constitution or are in some manner traceable to the constitution, or those that the court feels are preservative of other basic civil and political rights. *See Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Harper v. Virginia State Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). Rights outside this ambit, such as those allegedly infringed upon by "blue laws" or "Sunday closing laws", are considered nonfundamental. When reviewing a cause, such as ours, alleging that a state statute violates the due process or equal protection clause of the fourteenth amendment, thereby denying one a nonfundamental right, the reviewing court must review all of the evidence and determine whether it excludes the possibility that there is *any* rational relationship between the purpose of the statute and its effect, and whether the evidence excludes the possibility that the statute bears any rational relationship to an actual or articulated state interest. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

Review of the record demonstrates that Mr. Cohen's testimony was not based on any substantive analysis of the statute. Dr. Moore-Ede merely concluded that the statute was not perfectly efficient in accomplishing a day of rest and that possible negative effects were observed. Finally, Dr. Wooton's study, though perhaps methodologically flawed, actually indicated some level of effectiveness of the statute in closing down retail businesses on weekends. *See State v. Revco, D.S., Inc.,* 675 S.W.2d 219, 221 (Tex.App.—Dallas 1984, no writ).

Thus, while the means chosen by the legislature to secure commercial inactivity on the weekends may indeed operate "imperfectly or incompletely" since some merchants stay open all week regardless of the Blue Law, the imperfections do not rise to the level of an essentially arbitrary or discriminatory burden. Moreover, even though there is some "inequality in the economic burden of such social engineering," since the statute may impact adversely on some women, student part-time workers, and busy consumers, the end of reducing commercial activity is not invalidated. *See Ex parte Robbins,* 661 S.W.2d 740, 744 (Tex.App.—El Paso 1983, no writ). Finally, while appellee demonstrated that society had changed dramatically in the more than twenty years since the statute's enactment, appellee failed to demonstrate the absence of *any* rational relationship between the statute and its goals. Mere changes in conditions, without the severance of *any rational relationship* between the means and ends of the statute, do not render a provision unconstitutional. *Cf. Fort Worth & D.C. Ry. Co. v. Welch,* 183 S.W.2d 730 (Tex.Civ.App.—Amarillo 1944, writ ref'd).

■ We hold article 9001 not violative of the due process and equal protection clauses of the United States Constitution. We also hold that, under the tests applied, article 9001 does not violate the Texas Constitution. *Cf. Spartan's Industries,* 447 S.W. at 410 (application of same analysis to constitutional arguments made under U.S. and Texas Constitutions).

## VAGUENESS

■ The trial court also found that article 9001 was unconstitutionally vague un-

der the fourteenth amendment, "because it is not possible for a person to know in advance whether his proposed conduct will later be held to have been illegal." As with due process and equal protection, numerous Texas courts have rejected similar arguments.

In *Spartan's Industries*, the Texas Supreme Court rejected the argument that article 9001 violated due process prohibitions against vague and indefinite provisions and concluded:

[V]irtually all of these terms are common words which will be understood by any merchant. If a marginal or questionable case could be posed for the application of the word "hardware," for example, this would be no ground for vitiating an entire legislative enactment.

447 S.W.2d at 413 (citations omitted).

Vagueness attacks have also been raised and rejected in several appeals court cases. *See Michelle Corp. v. El Paso Retailers Association*, 675 S.W.2d 610 (Tex.App.—El Paso 1984, no writ); *Hill v. Gibson Discount Center*, 437 S.W.2d 289 (Tex.Civ. App.—Amarillo 1968, writ ref'd n.r.e.); *Spartan Industries, Inc. v. State*, 379 S.W.2d 931 (Tex.Civ.App.—Eastland 1964, no writ). In *Hill*, the court set out the important principle of judicial review, guiding our interpretation of the statute: "[c]ourts are not to give a statute an interpretation which renders it void, when it is susceptible of another interpretation that renders it valid." 437 S.W.2d at 292.

Appellee urges on appeal that these prior decisions are not dispositive, because the evidence presented at trial demonstrated the fatal vagueness of the list of items. Appellee also contends that "as time passes and new products are introduced, the statute becomes increasingly outdated and difficult to interpret and apply." Finally, appellee cites a recent Arkansas Supreme Court decision, *Handy Dan Improvement Center, Inc. v. Adams*, 276 Ark. 268, 633 S.W.2d 699 (1982), invalidating an Arkansas statute containing similar, and in some cases identical, classifications.

First, the testimony of appellee's witnesses at trial did demonstrate the existence of potentially conflicting definitions of some items listed in the statute and that new products have been introduced since the statute's enactment. On cross-examination, however, many of appellee's retailer witnesses agreed with various common sense definitions of items contained in one's average dictionary.

Moreover, the Arkansas statute ruled unconstitutionally vague in *Handy Dan Improvement Center*, was held distinguishable from the Texas statute in *Michelle Corp. v. El Paso Retailers Association*. There the court wrote:

We find our statute distinguishable from that struck down in *Handy Dan*. While some of the fourteen descriptive phrasings utilized in [the Arkansas statute] are the same or similar to those appearing in Article 9001, Sec. 1, our statute presents forty three categories of proscribed merchandise, with greater specificity.

*Michelle Corp.*, 675 S.W.2d at 612.

Again, while article 9001 is not without imperfection, it is sufficiently precise to pass constitutional muster. This conclusion was established by the Texas Supreme Court in *Spartan's Industries*, and the new evidence presented fails to compel our challenging that decision. We hold that the statute is not unconstitutionally vague or indefinite.

## DUE PROCESS AND THE PRIVATE ENFORCEMENT SCHEME

The trial court held that, while the private enforcement scheme of the statute "does not itself violate" the United States or Texas Constitution, the legislature's creation of an "irrebuttable presumption" that the violation of the Blue Law is a nuisance deprived appellee of an opportunity to defend itself and denied appellee due process under the United States Constitution. Also, appellee contends in a cross-point that the trial court should have held the statutory scheme unconstitutional since it does not require plaintiffs seeking injunctions to

prove that the Blue Law violator's actions caused damage and constituted a public nuisance.

In *Spartan's Industries,* the Texas Supreme Court noted that the legislature may not "validly declare something to be a nuisance which is not so in fact." *Spartan's Industries,* 447 S.W.2d at 414. If, however, the regulation is a valid exercise of the police power and comports with due process, the legislature may authorize private enforcement of the statute through injunction. *Id.* The supreme court concluded that since the statute constituted a valid measure designed to promote health and welfare, the private enforcement scheme was constitutional.

The private enforcement/nuisance provision of the Blue Law is thus judged by the same standard as applied in the context of substantive due process analysis: is the statute reasonably related to the health and welfare of the people of Texas? Concluding, as we do, that article 9001 passes due process scrutiny as a valid exercise of the state's police power, we must also conclude that the private enforcement scheme, as applied to appellee, is constitutional.

## EQUAL PROTECTION AND SELECTIVE ENFORCEMENT

■ Appellee asserts by cross-point that the trial court erred in not holding that it was the subject of selective enforcement in violation of the United States and Texas Constitutions. Assuming that appellee has standing to assert this claim, we view it to be without merit.

Appellee contends that enforcement of the Blue Law in Harris County has been surrendered to private interest groups, such as appellant, that seek to enjoin competitors while allowing their own members to continue to violate the statute. Appellee urges that this private selective enforcement constitutes "state action" and is in violation of the equal protection clauses of the federal and state constitutions.

The fourteenth amendment does not prohibit purely private actions discriminating against similarly situated persons. Only when those private actions "may fairly be said to be that of the States" will the actions be subjected to constitutional scrutiny. *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). The actions of state courts in applying their laws have long been considered "state action," even when the litigants involved are private parties. *Id.* at 14, 68 S.Ct. at 842.

The state action involved here, judicial enforcement of the Blue Law, was not alleged by appellee, at trial or on appeal, to be discriminatory. No showing has been made that the trial courts of Texas have enforced the statute in any discriminatory manner. Moreover, we will not automatically impute a potentially discriminatory motive, in appellant's filing suit, to the state acting in its judicial capacity in enforcing article 9001. *Cf. S.S. Kresge Co. v. State,* 546 S.W.2d 928 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.) (motivation of private party filing complaint not imputed to district attorney in prosecuting case). No evidence was introduced to show that action fairly attributable to the state violates the equal protection clause of the United States Constitution.

## INTERSTATE COMMERCE

■ Finally, appellee argues in its fourth cross-point that enforcement of the Texas "Blue Law" imposes "an unconstitutional impairment of interstate commerce." Appellee contends that manufacturers outside the state cannot sell goods within the state on Sunday, and as a result, interstate commerce will be impaired.

Appellee cites no authority for the novel proposition that a statute of this nature, applying with equal force to Texas and out-of-state producers selling goods in Texas, violates the interstate commerce clause of the United States Constitution. *Cf. State v. Rockdale Assoc., Inc.,* 125 Vt. 495, 218 A.2d 718 (exemption for local producers allowing Sunday sales where out-of-state producers could not sell on Sunday held unconstitutional). Clearly, a state regulation affecting interstate commerce,

assuming *arguendo* that ours is such a provision, will be upheld if the regulation is rationally related to a legitimate state end, and the regulatory burden is outweighed by that state interest. *See* L. Tribe, *American Constitutional Law* 326 (1978). Under the analysis previously conducted, article 9001 does not violate the interstate commerce clause.

## CONCLUSION

There is little doubt that the Texas Blue Law is unpopular and archaic. As the Texas Supreme Court noted in *Spartan's Industries*, however, it is not our task to judge the wisdom or popularity of a legislative provision. We should also be cognizant of the principle of judicial review enunciated in *Vornado, Inc. v. Hyland*, 77 N.J. 347, 390 A.2d 606 (1978), *appeal dism'd*, 439 U.S. 1123, 99 S.Ct. 1037, 59 L.Ed.2d 84 (1979). In *Vornado*, the New Jersey Supreme Court reversed an intermediate appellate court's invalidation of a statute analogous to the Texas Blue Law and concluded:

> Courts have the paramount obligation not to invalidate legislation merely because they disapprove of its public policy; to yield to the impulse to do so is to subvert the sensitive inter-relationship between the three branches of government which is at the heart of our form of democracy.

390 A.2d at 610. *See also State ex rel. Guste v. K-Mart Corp.*, 462 So.2d 616 (La., 1985) (not yet reported) (reversing trial court's invalidation of Louisiana Sunday Closing Law).

Appellant's first, second, third, fourth, and fifth points of error are sustained; appellee's cross-points are overruled.

The judgment is reversed and the cause is remanded for entry of an order permanently enjoining appellee from violating article 9001.

## OPINION ON MOTION FOR REHEARING

### PER CURIAM.

In its motion for rehearing, appellee contends that this court erred by ignoring the many findings of fact promulgated by the trial court. Appellee argues that these findings are binding on us in our review of the constitutionality of the Blue Law since they were unchallenged by appellant. Appellee further contends that this court "should have considered only [its] evidence and construed all inferences in [its] favor." Finally, appellee contends that this court erred in reviewing the sufficiency of the evidence when no point was assigned on appeal.

■ Restated, our obligation in reviewing the constitutionality of a statute under the due process and equal protection provisions of the United States and Texas Constitutions is to determine whether *any rational relationship* can reasonably be conceived between the statute's purpose and its means. In the local economic sphere, only wholly arbitrary acts will be invalidated as violative of due process and equal protection. *City of New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). As the members of the United States Supreme Court wrote:

> [T]he judiciary may not sit as a superlegislature to judge the wisdom or desireability of ·legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.

*City of New Orleans v. Dukes*, 427 U.S. at 303, 96 S.Ct. at 2516.

■ Appellee contends that since the sufficiency of the evidence supporting the trial court's findings was not challenged, we are bound by those findings. We note initially that appellee has failed to cite any authority for this proposition in a case in which the constitutionality of a statute has been challenged. Moreover, several of the lower court's "Findings of Fact" are in actuality "Conclusions of Law" and are thus reviewable under rules applicable to all cases. *See, e.g.,* Finding of Fact Number 13, *supra* ("There is no rational rela-

tionship between Article 9001 and the health, recreation and welfare of the people of the State of Texas"). In any event, where the constitutional issues involved are inextricably intertwined with the trial court's findings, proper consideration of those issues requires a review of the entire record. *Cf. Fiske v. State of Kansas,* 274 U.S. 380, 385–86, 47 S.Ct. 655, 656–57, 71 L.Ed.2d 1108 (1926); *Northern Pacific R. v. North Dakota,* 236 U.S. 585, 593, 35 S.Ct. 429, 432, 59 L.Ed. 735 (1915) (where constitutionality of state statute is attacked reviewing court is obligated to review facts when they are "intermingled" with conclusion of law). *See also State ex rel. Guste v. K-Mart Corp.,* 462 So.2d 616 (La.1985) (not yet reported) (state supreme court's review of fact findings in Louisiana Blue Law case); *Vornado, Inc. v. Hyland,* 77 N.J. 347, 390 A.2d 606, 612–14 (1978) *appeal dism'd,* 439 U.S. 1123, 99 S.Ct. 1037, 59 L.Ed.2d 84 (1979) (state supreme court's detailed review of evidence of unconstitutionality of New Jersey Blue Law). Our review should not, however, include an evaluation of the credibility of witnesses since the trier of fact is the sole judge of credibility of witnesses. *Harris County v. Hall,* 141 Tex. 388, 172 S.W.2d 691, 696 (1943); *Cobb v. Dunlap,* 656 S.W.2d 550, 553 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

■ In sum, where a statute's constitutionality is challenged under the due process and equal protection clauses of the state and federal constitutions, the reviewing court is required to examine all the evidence presented in an attempt to demonstrate the absence of any rational relationship between the statute's means and ends. On original submission, we reviewed all the evidence, including that admitted by judicial notice, but absent an evaluation of witness credibility, in determining that appellee failed to meet its burden. The standards of review developed to evaluate the constitutionality of ·economic legislation narrowly circumscribe the powers of the appellate judiciary. We decline appellee's invitation to encroach upon or supplant the powers of the legislature to formulate policy.

Appellee's motion for rehearing is overruled.